FILED
2026 Sep-30 PM 03:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

**DALE EDWARDS,**
Plaintiff,

**v.**

**NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY, *et al.*,**
Defendants.

**Case No. 4:25-cv-1276-CLM**

# MEMORANDUM OPINION

Dale Edwards sued Nationwide Property & Casualty Insurance Company and its agent DeWayne Ray in state court. Nationwide removed the case to this court under diversity jurisdiction, claiming that Edwards (an Alabama citizen) fraudulently joined Ray (an Alabama citizen) to defeat federal jurisdiction. (Doc. 1). Edwards moves to remand. (Doc. 13).

For the reasons below, the court **GRANTS** Edwards' motion to remand and thus holds the other pending motions for the state court to decide. (Docs. 14, 23).

## BACKGROUND[1]

### A. Factual Background

Dale Edwards owned two homes in Guntersville: he lived in one home with his wife ("Home 1") and his daughter and son-in-law lived in the other ("Home 2"). Edwards was a long-time friend of Nationwide Insurance agent DeWayne Ray. Sometime in 2018-19, Ray sold Edwards policies covering both Home 1 and Home 2. Edwards' daughter paid the premium for Home 2, plus her vehicles, by auto-draft each month.

[1] The court draws its facts from the allegations in Edwards' complaint and exhibits attached to Nationwide's notice of removal and views the facts in a light most favorable to Edwards. *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).

In September 2023, Edwards told Ray (his agent) that he was going to cancel the policy on Home 1 because the premium had increased too much. Ray agreed and cancelled the Home 1 policy. Ray did not, however, tell Edwards that cancelling the Home 1 policy would result in Nationwide refusing to renew the Home 2 policy the next year, despite Ray knowing that Nationwide's non-renewal practice dictated that the cancellation of a primary home policy would result in the refusal to insure a secondary residence.

Consistent with Nationwide practice , Nationwide did not auto-renew the Home 2 policy in April 2024, meaning the Home 2 policy expired on April 10, 2024. Edwards says in his complaint that Nationwide did not tell him or his daughter (who paid the premium) about the non-renewal. Nationwide and Ray disagree and have submitted a March 7, 2024, non-renewal notice addressed to Edwards and copied to Ray that says the policy would lapse on April 10, 2024, because Edwards had "no primary home policy with Nationwide." (Doc. 14-2). The notice told Edwards to call Ray if he had any questions. But Ray and Edwards did not talk about Home 2's non-renewal from March to October 2024, despite Ray hiring Edwards to help sell insurance and Edwards' daughter continuing to pay her (now-decreased) monthly premiums.

Home 2 and its contents were destroyed by fire on October 1, 2024. A day or two later, Ray gave Edwards a copy of the March 7th non-renewal notice. Edwards made a claim, and Nationwide denied it. So Edwards sued Nationwide and Ray.

### B. Litigation Background

Edwards has filed two complaints: the original state-court complaint (doc. 1-1) and an amended complaint (doc. 12), which Edwards filed in this court after his deposition. There are two notable differences between the complaints.

First is Edwards' factual allegation about his discussion with Ray about cancelling the policy for Home 1. In his original complaint, Edwards alleged that he met with Ray; he asked Ray if cancelling the Home 1 policy would affect the Home 2 coverage; and, Ray told Edwards that it would

not. (Doc. 1-1, ¶ 8). In the amended complaint, Edwards says that he contacted Ray (not "met with") Ray, and Edwards deletes the conversation about the impact cancelling the Home 1 policy would have on the Home 2 policy. (Doc. 12, ¶ 8).

This likely explains the second substantive change: the removal of a count of fraudulent misrepresentation:

| | **Original Complaint** | **Amended Complaint** |
|---|---|---|
| Count 1: | Breach of Contract | Breach of Contract |
| Count 2: | Negligence | Negligence |
| Count 3: | Fraudulent Suppression | Fraudulent Suppression |
| Count 4: | Fraudulent Misrepresentation | n/a |

The parties disagree on which complaint controls the court's analysis of the motion to remand. The court can avoid that on-going question, however, by focusing only on Count 3 (fraudulent suppression), which reads the same in both complaints and does not hinge on the deleted fact assertion that Ray told Edwards that cancelling the Home 1 policy would not impact the Home 2 policy. But first, the court explains the standards for reviewing the motion.

## STANDARD OF REVIEW

### A. Diversity Jurisdiction

Federal district courts are courts of limited jurisdiction. "They are empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution, and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (internal quotation omitted). So a court "should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *Id.* at 410. "[R]emoval jurisdiction is no exception" to this

obligation. *Id.* Indeed, "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Id.*

Nationwide premised removal upon this court's diversity jurisdiction. Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds the statutory prescribed amount of $75,000. *See* 28 U.S.C. § 1332(a). Complete diversity requires that every "plaintiff must be diverse from every defendant." *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990); *Palmer v. Hosp. Auth.*, 22 F.3d 1559, 1564 (11th Cir. 1994). "A removing defendant bears the burden of proving proper federal jurisdiction." *Leonard v Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002). And "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Id.* "[A]ll doubts about jurisdiction should be resolved in favor of remand to state court." *Univ of S. Ala.*, 168 F.3d at 411.

**B. Fraudulent Joinder**

"In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (citing *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989)).

The burden of establishing fraudulent joinder is a heavy one. If a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court. *See id.*; *Cabalceta*, 883 F.2d at 1562. The determination of whether a resident defendant has been fraudulently joined must be based on the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts the parties submit. *Crowe*, 113 F.3d at 1538. In making its determination, the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor. *Id.*

## DISCUSSION

As mentioned, to avoid the amended complaint issue, the court confines its discussion to Edwards' allegation in Count 3 that Ray knew and fraudulently suppressed that Nationwide would refuse to renew Edwards' Home 2 policy if Edwards cancelled his Home 1 policy. To ultimately prove that claim, Edwards would have to prove five things:

> (1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damages as a proximate result.

*Johnson v. Sorensen*, 914 So. 2d 830, 837 (Ala. 2005) (quoting *Waddell & Reed, Inc. v. United Invs. Life Ins. Co.*, 875 So. 2d 1143, 1161 (Ala. 2003)).

Edwards' pleaded facts clearly meet Elements #2-5. Edwards pleads enough facts that, if proved true, would allow a juror to find that Ray knew that Nationwide's pattern and practice was to refuse to renew home policies if the insured did not use Nationwide to insure his primary residence (Element #3); that Ray did not tell Edwards about this pattern and practice (Element # 2); that Edwards cancelled his Home 1 policy and did not seek another policy on Home 2 because he relied on Ray's silence to mean that there would be no impact on his Home 2 policy (Element #4); and, Edwards' reliance on Ray caused the Home 2 policy to lapse, thus making Edwards fully liable for the Home 2 fire damage instead of Nationwide (Element #5).[2] *See Ex parte Household Retail Servs. Inc.*, 744 So. 2d 871, 879 (Ala. 1999) ("Although the term 'inducement' has often been used in the description of the fourth element of suppression, it is clear that a plaintiff's 'justifiable reliance' (or, today, 'reasonable reliance') is an essential element of a suppression claim.") (cleaned up).

---

[2] Defendants argue that Edwards' receipt of the non-renewal notice in March 2024 disproves reasonable reliance. But Edwards says that he did not receive the notice before the October fire (doc. 19, p. 9). This fact dispute would prevent a state court from granting a Rule 12 or 56 motion.

Element #1 (Ray's duty to disclose) is the closer call, and this federal court is hesitant to go in depth on the issue out of respect for the parties, state court judges, and principles of federalism. In other words, I don't want to be seen as giving my opinion on this purely state-law issue that Edwards pleaded in state court. So the court limits its analysis to the finding mandated by Eleventh Circuit precedent: If Ray moved to dismiss Count 3 on failure to plead facts that establish duty, I find it possible that a state court judge *could* deny that motion by citing Alabama caselaw that suggests an insurance agent can assume a duty to tell a long-standing client for whom he procured a policy that the policy would not be renewed if the client took a certain action. *See, e.g.*, *Palomar Ins. Corp. v. Guthrie*, 583 So. 2d 1304 (Ala. 1991) (finding that "the jury could properly find that [insurance agency and its employee] assumed a duty to notify [the insured] of the time for renewal and the time of the lapse of his insurance policy" and thus affirming jury verdict for plaintiff on negligent failure to insure). I do not find that a state court *would* or *should* read Alabama law this way, nor should the parties on remand try to cite this opinion as suggesting that this court favors either side of this state-law issue.

—

The court has kept this opinion brief for two reasons. First, this case is not the vehicle to drive into the debate whether the Supreme Court's decisions in *Royal Canin USA Inc. v. Wullschleger*, 604 U.S. 22 (2025) and *Hain Celestial Group, Inc. v. Palmquist*, 607 U.S. 421 (2026) abrogated or signaled the death knell for the Eleventh Circuit's rule that district courts must judge fraudulent joinder "based upon the plaintiff's pleadings at the time of removal," rather than later amendments, *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). Because the court can avoid the issue in a non-appealable order, it does.

Second and more importantly, having read the motions, the briefs, and the cases the parties cite, the court can see the debatable issues of state law the court would have to analyze if it chose to dive head-first into a deeper analysis of what a state court judge might do with Defendants' motions to dismiss. Federal judges should avoid giving advisory opinions on state-law issues because Defendants chose to remove cases under the

cloak of "fraudulent joinder." But that's what Eleventh Circuit precedent requires us to do. I hope that the Circuit Court, sooner rather than later, heeds Justice Thomas's call to reconsider the practice:

> But this Court's precedents do not support the lower courts' more recent approach. As I read them, this Court's 'fraudulent joinder' precedents concerned only whether the plaintiff avoided federal diversity jurisdiction by bad faith or actual fraud—such as lying about a party's conduct or citizenship. *See Alabama Great Southern R. Co.*, 200 U.S. at 218, 26 S.Ct. 161 (asking whether the plaintiff "attempt[ed] to commit a fraud upon the jurisdiction of the Federal courts"); *Illinois Central R. Co. v. Sheegog*, 215 U.S. 308, 316, 30 S.Ct. 101, 54 L.Ed. 208 (1909) (asking whether a claim was 'fraudulent and false'); *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 190, 52 S.Ct. 84, 76 L.Ed. 233 (1931) (asking whether the plaintiff committed 'actual fraud'). These precedents were limited to cases of 'extreme abuse.' *Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F.Supp.2d 590, 596 (ED Ky. 2011) (Thapar, J.). Unlike the lower courts' more recent decisions, they did not appear to turn on the strength of the claims on the merits.
>
> Federal courts sitting in diversity likely cannot dismiss nondiverse parties based on their view of the merits of the claims against those parties. Doing so appears unfaithful to Congress's limits on our diversity jurisdiction and inconsistent with this Court's precedents. As Judge Thapar has put it, the improper-joinder doctrine 'requires federal courts to exercise jurisdiction where none exists over questions of state law that the state courts are better suited to address themselves.' *Id.*, at 597. In a future case where the issue is briefed and squarely presented, this Court should consider the propriety of the improper-joinder doctrine.

*Hain Celestial Group, Inc. v. Palmquist*, 607 U.S. 421, 437 (2026) (Thomas, J. concurring). In the meantime, this court will do its best to limit its discussion of "questions of state law that the state court are better suited to address themselves," *id.*, questions like the extent of an insurance agent's duty to advise his client under Alabama law.

## CONCLUSION

For these reasons, the court lacks subject matter jurisdiction. The court must therefore **GRANT** Edwards' motion to remand (doc. 13) and **DIRECT** the Clerk of Court to **TERM** Ray's motion to dismiss (doc. 14) and Edwards' motion to substitute (doc. 23) so that the state court may deal with those issues. The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** on September 30, 2026.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE